## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 05 B 4620 |
| | ) | Chapter 7 |
| MARTIN and ELVIRA LAREDO, | ) | Judge John H. Squires |
| | ) | |
| Debtors. | ) | |
| | ) | |
| —————————————————————— | ) | |
| | ) | |
| DAVID E. GROCHOCINSKI, Trustee, | ) | Adv. No. 05 A 1785 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARTIN LAREDO, ELVIRA LAREDO, | ) | |
| and INTERNAL REVENUE SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion of David E. Grochocinski, Chapter 7 trustee (the "Trustee") for the estate of Martin and Elvira Laredo (collectively, the "Debtors"), for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Federal Rule of Civil Procedure 56 on the complaint filed by the Trustee, seeking a determination of the priority of liens in and claims to the proceeds of the sale of the Debtors' real property. Specifically, the Trustee requests a finding that the Debtors' homestead exemption is subordinate to both the lien of the United States Internal Revenue Service (the "IRS") and the administrative and closing expenses incurred in liquidating the real property.[1]

---

[1] The Trustee's complaint is styled "Complaint to Determine Nature, Extent and Priority of Liens." However, the complaint seeks solely a determination of the relative priorities of the Debtors' homestead exemption, liens under 11 U.S.C. § 724(b),

-2-

For the reasons set forth herein, the Court finds as a matter of law that the IRS's lien takes priority over the Debtors' claim of the state law exemption pursuant to 11 U.S.C. § 522(c)(2)(B). Further, the Court finds that the distribution mechanism required by 11 U.S.C. § 724(b) subordinates the tax lien to priority claims under 11 U.S.C. §§ 507(a)(1)-(7). Thus, the Court holds that both the IRS's lien and the priority claims take precedence over the Debtors' homestead exemption and finds that there will be no funds available from the proceeds to pay the exemption. Accordingly, the Court grants the Trustee's motion for summary judgment. The Trustee may take immediate possession of the Debtors' real property without payment to the Debtors for their exemption.

## I.  JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## II.  UNDISPUTED FACTS AND BACKGROUND

The following facts are undisputed or, as discussed *infra*, have been deemed admitted pursuant to Local Bankruptcy Rule 7056-2B. At the time of the filing of their petition, the Debtors were joint owners of real estate located at 336 South Cornell Avenue, Villa Park, Illinois (the "Property"), which they occupy as their primary residence. (7056-1 statement

---

administrative expenses under 11 U.S.C. § 507(a)(1), other priority claims that may exist pursuant to 11 U.S.C. §§ 507(a)(2)-(7), and the lien of the IRS.

-3-

¶ 7; Trustee's Decl. ¶ 2; Compl. ¶ 7; Debtors' and IRS's Answers ¶ 7.)  The Property is encumbered by two consensual mortgage liens in favor of Countrywide Home Loans ("Countrywide") in the amounts of $224,971.21 and $25,000.00.  (Summ. J. Motion ¶ 9; 7056-1 statement ¶ 8; Trustee's Decl. ¶ 3.)  A non-consensual tax lien filed by the IRS in the amount of $114,842.07 also encumbers the Property.  (Summ. J. Motion ¶ 10; 7056-1 statement ¶ 9; Trustee's Decl. ¶ 4; Compl. ¶ 9 and Ex. H.)

On February 11, 2005, the Debtors filed a voluntary joint petition for relief under Chapter 7 of the Bankruptcy Code.  Subsequently, on June 9, 2005, the IRS timely filed its secured claim in the amount of $114,842.07, as well as an unsecured priority claim for $167,426.40. (Compl. Ex. H.)  The Debtors valued the Property at $320,235.00 on Schedule A.  Schedule D reflects the three liens to which the Property is subject: the first and second mortgage liens and the IRS's tax lien.[2]  On Schedule C, the Debtors claimed a $15,000.00 homestead exemption pursuant to 735 ILCS 5/12-901.

Shortly after the bankruptcy filing, the Trustee was appointed to administer the estate and continues to serve as the duly appointed trustee. (7056-1 statement ¶ 6; Trustee's Decl.

---

[2]  The Debtors indicate on Schedule D that the amounts of the first and second mortgage liens are $220,000.00 and $25,000.00, respectively. In contrast, the Trustee asserts a first mortgage lien of $224,971.21. (Summ. J. Motion ¶ 9; 7056-1 statement ¶ 8; Trustee's Decl. ¶ 3.) Because the figure provided by the Trustee is more precise than the one on Schedule D and, more importantly, because the parties do not dispute this dollar amount, the Court adopts the Trustee's figure.

Schedule D also includes the IRS's lien for "2000 1040 taxes" in the amount of $80,567.00. This sum reflects the unpaid balance of the taxes owed. (See Debtors' Resp. Ex. E at 41.) The total amount of the IRS's secured claim of $114,842.07 includes both penalty and interest charges to the petition date. (See id. at 40.) None of the parties contests the amount of this secured claim.

AO 72A
(Rev. 8/82)

-4-

¶ 1.) Upon a review of the Debtors' books and records, the Trustee determined that there is "significant equity" in the Property. (Trustee's Decl. ¶ 2.) On April 22, 2005, the Court authorized the Trustee to retain a real estate broker to sell the Property, with commission to be paid to the broker at the rate of 5% on the final sale price of the Property. (Summ. J. Motion ¶ 7; Trustee's Decl. ¶ 5; Compl. Ex. F.) Subsequently, on September 2, 2005, the Court granted the Trustee's application to sell the Property pursuant to 11 U.S.C. §§ 363(b) and (f). (Compl. Ex. E.) Specifically, the Court authorized the Trustee to accept an offer of $380,000.00, subject to the terms and conditions of the real estate contract. (Summ. J. Motion ¶ 8; 7056-1 statement ¶ 12; Trustee's Decl. ¶ 6; Compl. Ex. E ¶ 2.)

On August 22, 2005, the Trustee filed a complaint seeking a determination of the priority of liens in and claims to the proceeds of the sale of the Property. The Trustee contends that the Debtors' homestead exemption should be limited to those funds that remain after the payment of the consensual liens, administrative expenses, closing costs, and the IRS tax lien. Specifically, the Trustee argues that, pursuant to § 522(c)(2)(B), the Debtors may not be paid their homestead exemption until the IRS's tax lien has been satisfied in full. The Trustee further contends that, pursuant to § 724(b), all administrative expenses incurred in connection with liquidation of the Property must be paid before the tax lien can be satisfied.

On October 3, 2005, the Trustee filed the instant motion for summary judgment. He asserts that, after deductions are made from the sale price of the Property to pay the consensual liens, the real estate broker fees, and other usual and customary closing costs, the net funds will be insufficient to satisfy the IRS lien in full, and, accordingly, there will be no funds available to pay the Debtors' claimed exemption. The Trustee seeks an order

AO 72A
(Rev. 8/82)

-5-

permitting him to take immediate possession of the Property, without payment of any funds to the Debtors.

In response, the IRS agrees that its lien must be satisfied before any claimed homestead exemption is paid to the Debtors. The IRS requests that the Court enter summary judgment in favor of the Trustee, specifically finding that the tax lien has priority over the Debtors' homestead exemption.

The Debtors admit that their claimed exemption should be limited to those funds that remain after payment to the IRS. However, they contend that the exemption takes second position after the tax lien and should be paid before the realtor fees, closing costs, or any other administrative expenses are satisfied. The Debtors also allege that the Trustee's actions in trying to sell the Property were negligent and caused severe damage to the estate.

## III.   **APPLICABLE STANDARDS**

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). *See also Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1019 (7th Cir. 2003).

-6-

The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmen's Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). On a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted).

In 1986, the United States Supreme Court decided a trilogy of cases which encourages the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322; *Matsushita*, 475 U.S. at 585-86.

All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998). The existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 248; *Frey v. Fraser Yachts*, 29 F.3d 1153, 1156 (7th Cir. 1994). "[S]ummary

-7-

judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The Seventh Circuit has noted that trial courts must remain sensitive to fact issues where they are actually demonstrated to warrant denial of summary judgment. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1065-66 (7th Cir. 2000); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000).

The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 323; *Matsushita*, 475 U.S. at 587; *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir. 1990).

Local Bankruptcy Rule 7056-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois, which deals with summary judgment motions, was modeled after LR56.1 of the Local Rules of the United States District Court for the Northern District of Illinois. Hence, the case law construing LR56.1 and its predecessor Local Rule 12 applies to Local Bankruptcy Rule 7056-1.

Pursuant to Local Bankruptcy Rule 7056, a motion for summary judgment imposes special procedural burdens on the parties. Specifically, the Rule requires the moving party

-8-

to supplement its motion and supporting memorandum with a statement of undisputed material facts ("7056-1 statement"). The 7056-1 statement "shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Bankr.R. 7056-1B.

The party opposing a summary judgment motion is required by Local Rule 7056-2 to respond ("7056-2 statement") to the movant's 7056-1 statement, paragraph by paragraph, and to set forth any material facts that would require denial of summary judgment, specifically referring to the record for support of each denial of fact. Local Bankr.R. 7056-2. The opposing party is required to respond "to each numbered paragraph in the moving party's statement" and to make "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]" Local Bankr.R. 7056-2A(2)(a). Most importantly, "[a]ll material facts set forth in the [7056-1] statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Bankr.R. 7056-2B.

The Trustee filed a 7056-1 statement that substantively complies with the Local Rule. It includes numbered paragraphs establishing undisputed facts with references to accompanying exhibits,[3] as well as the Trustee's own declaration in support of the motion. The declaration sets forth all of the undisputed facts in Section II *supra* of the instant

---

[3] Although each paragraph of the Trustee's 7056-1 statement refers generally to parts of the record and other supporting materials relied upon, the Trustee fails to include specific page or paragraph citations.

AO 72A
(Rev. 8/82)

-9-

Memorandum Opinion. In addition, the Trustee asserts that the sale of the Property for the price of $380,000.00 was pending as of September 30, 2005. (Trustee's Decl. ¶ 6.) According to the Trustee, the real estate broker's fee of 5% on the final sale price amounts to $19,000.00. (*Id.* ¶ 7.) He also states that additional expenses to be paid at closing include payment for title insurance, a property survey, ad valorem taxes, and state or local transfer taxes. (*Id.* ¶ 8.) Finally, the Trustee erroneously notes that the sum of $383,813.28 to cover the two consensual liens, the tax lien, and the broker's fee is *less* than the selling price of the Property.[4]  (*Id.* ¶ 7.)

In response to the Trustee's 7056-1 statement, the IRS filed a 7056-2 statement that fully complies with the Rule. It admits or notes "no objection" to each numbered paragraph in the Trustee's statement of undisputed facts.

In stark contrast, the Debtors have wholly failed to comply with the Rule. They have not responded, paragraph by paragraph, to the Trustee's 7056-1 statement, nor have they timely filed any document even remotely resembling a 7056-2 statement, in form or in substance, as required by the Local Rule. Rather, the Debtors filed only a narrative response to the Trustee's motion, providing their version of the various facts, explaining the importance of the homestead exemption, and charging the Trustee with negligently

---

[4]  The Debtors make much ado about the Trustee's error, suggesting that the mistake constitutes a genuine issue of material fact. However, the motion for summary judgment, the 7056-1 statement, and the complaint all make clear that the Trustee meant to say that the sum of the three liens and the broker's fee is *more* than the selling price of the Property. (*See* Summ. J. Motion ¶¶ 11 and 13; 7056-1 statement ¶ 13; Compl. ¶ 14.) Moreover, the Court can take judicial notice of the fact that $383,813.28 is more than $380,000.00. Notwithstanding the Trustee's pleading carelessness, his error does not create a material issue of fact necessitating a trial.

-10-

administering the bankruptcy estate. The Debtors' response is entirely insufficient for compliance with Rule 7056 and does not serve the purpose of framing the pleadings at bar or making specific references to those parts of the record on which the party opposing the summary judgment relies to show a material factual dispute. *See Davis v. Ill. State Police Fed. Credit Union (In re Davis)*, 244 B.R. 776, 782 (Bankr. N.D. Ill. 2000). The Court is not obliged to sift through the record to ferret out those parts relied upon by the Debtors in opposition to the motion for summary judgment. *Id.*

The Court is mindful of the fact that the Debtors are proceeding without the benefit of counsel and that it is the "well-established duty of the . . . court to ensure that the claims of a *pro se* litigant are given a 'fair and meaningful consideration.'" *Palmer v. City of Decatur*, 814 F.2d 426, 428-29 (7th Cir. 1987); *see also Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981) (finding that "pro se pleadings [are] held to less stringent standards than those prepared by counsel"). Even so, the Court cannot properly disregard the requirements of Rule 7056. "Although civil litigants who represent themselves ("pro se") benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant, pro se litigants are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) (citations omitted).

The Seventh Circuit has upheld strict application of local rules regarding motions for summary judgment. *See Dade v. Sherwin-Williams Co.*, 128 F.3d 1135, 1140 (7th Cir. 1997); *Feliberty v. Kemper Corp.*, 98 F.3d 274, 277-78 (7th Cir. 1996); *Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 938 (7th Cir.), *cert. denied*, 510 U.S. 916 (1993); *Schulz*

-11-

*v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir. 1992); *Maksym v. Loesch*, 937 F.2d 1237, 1240-41 (7th Cir. 1991). Compliance with Local Rules 7056-1 and 7056-2 is not a mere technicality. Courts rely greatly on the information in these statements in separating the facts about which there is a genuine dispute from those about which there is none. *Am. Ins. Co. v. Meyer Steel Drum, Inc.*, No. 88 C 0005, 1990 WL 92882, at *7 (N.D. Ill. June 27, 1990). The statements required by Rule 7056 are not merely superfluous abstracts of evidence. Rather, they

> are intended to alert the court to precisely what factual questions are in dispute and point the court to specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

*Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994). Because the Debtors have failed to comply with Rule 7056-2, all material facts in the Trustee's 7056-1 statement are deemed admitted and are set forth in Section II *supra* of the instant Memorandum Opinion.[5]

## IV.   DISCUSSION

### A.   Distribution of Sale Proceeds

#### 1.   Relative Priorities of Homestead Exemption and Tax Lien

The Debtors assert that they are entitled to a homestead exemption pursuant to 11

---

[5] Notwithstanding the Seventh Circuit's holding that a pro se litigant must be informed of the consequences of failing to properly respond to a motion for summary judgment, *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), there are no material factual issues in dispute in this matter. Accordingly, the Debtors' failure to comply with Rule 7056-2—and the resulting admission of all of the material facts in the Trustee's 7056-1 statement—does not alter the outcome in the matter at bar.

-12-

U.S.C. § 522(b) and 735 ILCS 5/12-901 and that they will be left "out in the cold" if they are

deprived of their right to the exemption.   Under the Bankruptcy Code, debtors may choose

between the exemptions provided by federal law and those provided by state law,  11 U.S.C.

§ 522(b); *In re McGee*, 353 F.3d 537, 540 (7th Cir. 2003); *In re Kontrick*, 295 F.3d 724, 733

n.4 (7th Cir. 2002), *aff'd*, 540 U.S. 443 (2004), unless a state chooses to opt out of the federal

exemption scheme, 11 U.S.C. § 522(b)(1).   Illinois took advantage of this provision and

"opted out."  *See* 735 ILCS 5/12-1201; *see also Polis v. Getaways, Inc. (In re Polis)*, 217

F.3d 899, 901 (7th Cir. 2000); *In re Barker*, 768 F.2d 191, 194 n.4 (7th Cir. 1985).

Accordingly, the Debtors in this matter must utilize the exemptions provided by Illinois law.

*See In re Fishman*, 241 B.R. 568, 571-72 (Bankr. N.D. Ill. 1999); *In re Ball*, 201 B.R. 204,

206 n.4 (Bankr. N.D. Ill. 1996).

     The Illinois statute that sets forth the exemption of homestead provides in relevant

part as follows:

> Every individual is entitled to an estate of homestead to the extent in value
> of $7,500 of his or her interest in a . . . lot of land and buildings thereon ...,
> owned or rightly possessed by lease or otherwise and occupied by him or her
> as a residence . . . . That homestead and all right in and title to that homestead
> is exempt from attachment, judgment, levy, or judgment sale for the payment
> of his or her debts or other purposes . . ., except as provided in this Code ....

> If 2 or more individuals own property that is exempt as a homestead, the
> value of the exemption of each individual may not exceed his or her
> proportionate share of $15,000 based upon percentage of ownership.

735 ILCS 5/12-901.  The purpose of the homestead exemption provision is to secure the

debtor and his family the necessary shelter from creditors, thereby protecting his fresh start

in bankruptcy.  *Fishman*, 241 B.R. at 574 (finding that "[e]xemption . . . allow[s] debtors to

-13-

retain the exempted property for purposes of support and advancing a fresh start"); *In re Wright*, 156 B.R. 549, 554 (Bankr. N.D. Ill. 1992); *Bank of Illmo v. Simmons*, 492 N.E.2d 207, 211 (Ill. App. Ct. 1986). Exemption statutes must be liberally construed in favor of the debtor. *Barker*, 768 F.2d at 196; *Schriar v. Mose (In re Schriar)*, 284 F.2d 471, 473-74 (7th Cir. 1960); *In re McKinney*, 317 B.R. 344, 345 (Bankr. C.D. Ill. 2004). Where it is possible to interpret an exemption statute either favorably or unfavorably with respect to the debtor, the favorable method should be selected. *Barker*, 768 F.2d at 196; *In re Dealey*, 204 B.R. 17, 18 (Bankr. C.D. Ill. 1997).

Property for which a debtor claims an exemption is removed from the estate. *See* 11 U.S.C. § 522(b); *Fishman*, 241 B.R. at 574. Such property is further protected by § 522(c), which states in relevant part that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case[.]" 11 U.S.C. § 522(c). However, § 522(c) provides for various exceptions. Among them, § 522(c)(2)(B) specifically excepts a debt secured by a tax lien, "notice of which is properly filed." 11 U.S.C. § 522(c)(2)(B); *see also In re Dalip*, 194 B.R. 597, 602 (Bankr. N.D. Ill. 1996) (noting that § 522(c)(2)(B) does not allow avoidance of a tax lien under any of the exemption provisions of § 522, including the homestead exemption).

"Even though the homestead might be exempt under state law from the claims of private creditors, '[n]o provision of a state law may exempt property or rights to property from levy for the collection of' federal taxes owed." *See United States. v. Estes*, 450 F.2d 62, 65 (5th Cir. 1971). Indeed, the Supremacy Clause permits the federal government to effectively "'sweep aside state-created exemptions.'" *In re Bolden*, 327 B.R. 657, 663

AO 72A
(Rev. 8/82)

-14-

(Bankr. C.D. Cal. 2005) (*quoting United States v. Rodgers*, 461 U.S. 677, 701 (1983)).

Thus, "[a] state-created homestead exemption is ineffective against a federal tax lien."

*Davenport v. United States*, 136 B.R. 125, 127 (W.D. Ky. 1991) (*citing, inter alia, United States v. Mitchell*, 403 U.S. 190 (1971); *United States v. Bess*, 357 U.S. 51 (1958)). The

Illinois homestead exemption "does not erect a barrier around a taxpayer's home sturdy

enough to keep out the Commissioner of Internal Revenue." *Estes*, 450 F.2d at 65.

In the matter at bar, the Debtors properly claimed a cumulative $15,000.00 exemption

on their Schedule C.[6] *See In re Miller*, 174 B.R. 279, 282 (Bankr. N.D. Ill. 1994) (finding

that a husband and wife may both claim homestead exemptions of $7,500.00 for a combined

sum of $15,000.00); *In re Rhoades*, 176 B.R. 167, 169 (Bankr. C.D. Ill. 1994) (same).

Claiming such an exemption would ordinarily remove those funds from the estate. *See* 11

U.S.C. § 522(b). However, the Property here is subject to the IRS's tax lien, notice of which

was properly filed and recorded pre-petition on August 30, 2004. Thus, the Property is not

released from liability for the tax debt but is encumbered by the tax lien. *See* 11 U.S.C. §

522(c)(2)(B); *see also Bolden*, 327 B.R. at 663 (*citing, inter alia*, Treas. Reg. § 301.6334-

1(c)). Even liberally interpreting the Illinois homestead statute in favor of the Debtors, and

notwithstanding their impassioned argument that the exemption keeps debtors from being

cast into the streets homeless, the Court finds as a matter of law that the tax lien takes

---

[6] The Trustee's motion to object to the exemption was denied on August 15, 2005 without a determination of the relative liens encumbering the Property or the priorities thereof (*see* Debtors' Resp. Ex. F.), which are to be decided in this matter.

-15-

precedence over any assertion of the state law exemption pursuant to § 522(c)(2)(B).[7]

The Debtors, themselves, concede that the homestead exemption is inferior to the tax lien. (*See* Debtors' Resp. Ex. D ¶ 18.) However, they assert that the exemption should be paid with those funds that are available after the payment of the IRS lien. (*See id.* at 5-6.) That is, the Debtors argue that that the exemption should be satisfied before the broker's fee, administrative expenses, and other closing costs are paid. To address this contention, the Court turns to 11 U.S.C. § 724(b).

**2.    11 U.S.C. § 724(b)**

Section 724(b), applicable only in Chapter 7 cases, governs the distribution of property of the estate against which a tax lien is asserted. *In re Bino's Inc.*, 182 B.R. 784, 787 (Bankr. N.D. Ill. 1995); *In re Sherrill*, 78 B.R. 804, 807 (Bankr. W.D. Tex. 1987). The provision provides a rule by which a secured tax claimant's right to distribution of property of the estate is subordinated, up to the amount of its lien, to the rights of holders of claims entitled to priority under §§ 507(a)(1)-(7). 11 U.S.C. § 724(b); *see also Oakland County Treasurer v. Allard (In re Kerton Indus.)*, 151 B.R. 101, 102 (E.D. Mich. 1991); *Bino's*, 182 B.R. at 787; *King v. Bd. of Supervisors of Fairfax County (In re A.G. Van Metre, Jr., Inc.)*,

---

[7] The Debtors' reliance on *In re Szekely*, 936 F.2d 897 (7th Cir. 1991), is misplaced because the facts of that case, as well as the issue, are distinguishable from those in the matter at bar. In *Szekely*, the Chapter 7 trustee requested that the debtors be ordered to pay "rent" while they remained in their home after declaring bankruptcy, notwithstanding the homestead exemption. *Id.* at 898. The court held that the exemption entitled the debtors to remain on the property rent-free until they were paid the cash value of the exemption. *Id.* at 903. Unlike the instant matter, *Szekely* did not require a priority determination, nor did it involve a tax lien or administrative expenses. Moreover, the property in *Szekely* sold for more than the amount owing on the two mortgage liens, and the remaining proceeds were sufficient to cover the entire homestead exemption. *Id.* at 899. Such is not the case in this matter.

-16-

155 B.R. 118, 121-22 (Bankr. E.D. Va. 1993); *In re Granite Lumber Co.*, 63 B.R. 466, 470

(Bankr. D. Mont. 1986). Specifically, § 724(b) provides that property or its proceeds

encumbered by a tax lien shall be distributed in the following manner:

    (1)    first, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is senior to such tax lien;

    (2)    second, to any holder of a claim of a kind specified in section 507(a)(1), 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, to the extent of the amount of such allowed tax claim that is secured by such tax lien;

    (3)    third, to the holder of such tax lien, to any extent that such holder's allowed tax claim that is secured by such tax lien exceeds any amount distributed under paragraph (2) of this subsection;

    (4)    fourth, to any holder of an allowed claim secured by a lien on such property that is not avoidable under this title and that is junior to such tax lien;

    (5)    fifth, to the holder of such tax lien, to the extent that such holder's allowed claim secured by such tax lien is not paid under paragraph (3) of this subsection; and

    (6)    sixth, to the estate.

11 U.S.C. § 724(b).

The purpose of the statute is to subordinate tax liens to allow the debtor an

opportunity to get a fresh start. *See Morgan v. K.C. Mach. & Tool Co. (In re K.C. Mach. &*

*Tool Co.)*, 816 F.2d 238, 244 (6th Cir. 1987). "That opportunity would be unavailing if

creditors were unwilling to extend credit to a bankrupt. To stimulate that willingness,

Congress legislated protection for these administrative creditors." *Id.*; *see also Bino's*, 182

B.R. at 788 (noting that "Congress made a policy decision to favor the claims of wage

AO 72A
(Rev. 8/82)

-17-

earners, the costs of administration of the estate, and other priority claims over tax liens");

*Wurst v. City of N.Y. (In re Packard Props., Ltd.)*, 112 B.R. 154, 158-59 (Bankr. N.D. Tex.

1990) (finding that § 724(b) provides for the taxing authorities to bear the administrative

expenses to some extent, rather than the unsecured claimants); *Granite Lumber*, 63 B.R. at

470-71 (quoting the House Report which states that "[i]t would be grossly unfair for the

bankruptcy court and the attorneys who have labored to wind up the bankrupt's affairs and

to accumulate an estate for distribution to receive nothing for their labor").

Section 724(b) permits a Chapter 7 trustee to liquidate property subject to a tax lien

and to distribute the proceeds to priority claimants before making any distribution to taxing

authorities. *Bino's*, 182 B.R. at 787; *In re Dowco Petroleum, Inc.*, 137 B.R. 207, 210

(Bankr. E.D. Tex. 1992) ("Section 724(b) provides a mechanism through which the estate

can, if necessary, recover certain enumerated categories of administrative expenses from the

proceeds of the sale of property subject to a tax lien."). "The section in effect dictates that,

where there are tax lien claims, those claimants, rather than other secured creditors, will pay

for the cost of estate administration." *Sherrill*, 78 B.R. at 807; *see also Kerton Indus.*, 151

B.R. at 103 (finding that "§ 724(b) relieves the remainder of the estate of the burden of

paying those priority claims"). In practice, the provision allows certain administrative

claimants to "step into the shoes of the tax collector." H.R. REP. NO. 95-595, at 382 (1977),

1978 U.S.C.C.A.N. 6338; *see also Dowco Petroleum*, 137 B.R. at 211. "The only parties

affected by the operation of § 724(b) are the priority claimants and the tax lien creditors."

*Bino's*, 182 B.R. at 787. "The rights and claims of both senior and junior lienors and the

holders of non-priority unsecured claims are left undisturbed." *Id.*

-18-

Because the Property at issue in this matter is subject to the IRS's tax lien, § 724(b) controls the distribution of the proceeds of the sale.   Applying the distribution mechanism set forth in § 724(b), the first step is to disburse the proceeds to the holders of liens "senior" to the tax lien.    11 U.S.C. § 724(b)(1).    Thus, the first payment must be made to Countrywide, the holder of the two consensual mortgage liens in the amounts of $224,971.21 and $25,000.00.[8]  Subtracting these amounts from the purchase price of $380,000.00 offered for the Property leaves $130,028.79 remaining.

Step two in the distribution is to pay the priority claims under §§ 507(a)(1)-(7), but only to the extent of the amount of the allowed tax claim.  11 U.S.C. § 724(b)(2).  In the instant matter, these claims include the commission of $19,000.00, representing 5% on the final sale price of the Property, to be paid to the authorized real estate broker, as well as other costs associated with closing and all administrative expenses incurred in connection with liquidation of the Property.   An exact total figure has not been provided to the Court.

------

[8]  Section 724(b) does not define the terms "senior" or "junior" as used in the statute, nor does it indicate the basis upon which the determination of those priorities should be made.  However, in restructuring and restating the provisions of what is now § 724(b), Congress did not intend to "change prior settled law and practice that the relative priorities of liens in bankruptcy . . . [are] to be determined according to the nonbankruptcy lien law, or to create a new federal rule governing relative priority between tax and other liens." *Pearlstein v. United States Small Bus. Admin.*, 719 F.2d 1169, 1175-76 (D.C. Cir. 1983).

The seniority of secured interests in property is usually determined by state law. *Richardson v. First Fed. Savs. & Loan Ass'n (In re Stroud Wholesale, Inc.)*, 37 B.R. 735, 741 (Bankr. E.D.N.C. 1984), *rev'd on other grounds*, 47 B.R. 999 (E.D.N.C. 1985).  Under Illinois law, a lien that is recorded first in time generally has priority and "is entitled to prior satisfaction of the property it binds." *Union Planters Bank, N.A. v. FT Mortgage Cos.*, 794 N.E.2d 360, 363-64 (Ill. App. Ct. 2003) (internal quotation omitted); *see also TM Ryan Co. v. 5350 S. Shore, L.L.C.*, 836 N.E.2d 803, 807 (Ill. App. Ct. 2005).  The parties here do not dispute that the two consensual liens in favor of Countrywide are senior to the IRS's tax lien in this matter.

-19-

However, it is highly unlikely that the aggregate sum will exceed $114,842.07, the amount

of the IRS tax lien. Subtracting $19,000.00 for the broker's fee, the only figure currently

available, renders a remaining proceed balance of only $111,028.79 to which the tax lien

attaches.

After payment of all administrative expenses and other priority claims, the third step

in the distribution process is to pay the tax lien to the extent that the IRS's allowed claim

exceeds the amount distributed to the claimants holding priority claims. *See* 11 U.S.C. §

724(b)(3). With only slightly more than $111,000.00 of the proceeds remaining, it is clear

that, without even subtracting closing costs and other administrative expenses, the IRS's tax

lien will not be satisfied in full. Because the priority claims have been satisfied with

proceeds which would otherwise have been applied to the tax lien, the IRS bears the cost of

estate administration with respect to liquidation of the Property.

The remaining steps in the distribution scheme are not applicable in this matter,

because no further sales proceeds remain.[9] However, if there were any proceeds left, they

would not go to satisfy the Debtors' homestead exemption. That is, if any proceeds were to

remain, the fifth step would require their application to any unpaid balance of the tax claim.[10]

---

[9] Step four would not apply in any case, because there are no holders of allowed claims secured by a lien on the Property that is junior to the tax lien. *See* 11 U.S.C. § 724(b)(4).

[10] The IRS asserts that it may be entitled to "certain post-petition interest." (IRS 7056-2 statement ¶ 9.) Section 506(b) provides in pertinent part that "[t]o the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim . . . ." 11 U.S.C. § 506(b). Thus, the provision expressly entitles the holder of an oversecured claim to post-petition interest. *Id.*; *see also Schreiber v. United States (In re Schreiber)*, 163 B.R. 327, 334 (Bankr. N.D. Ill. 1994) (*citing United States v. Ron Pair*

-20-

*See* 11 U.S.C. § 724(b)(5). Thus, there would be no funds left to distribute to the estate, *see* 11 U.S.C. § 724(b)(6), let alone to pay the Debtors' claimed exemption.

In sum, the distribution mechanism required by § 724(b) subordinates the tax lien to the priority claims under §§ 507(a)(1)-(7). Accordingly, the Court holds that the broker's commission, closing costs, and all administrative expenses incurred in liquidating the Property must be paid before proceeds can be applied in partial satisfaction of the tax lien. As a result of this priority scheme, there will be no funds available to pay the Debtors their homestead exemption.

## B.    The Propriety of the Trustee's Attempts to Sell the Property

Finally, the Court addresses the Debtors' allegations that the Trustee acted negligently and imprudently by taking steps to sell the Property. Specifically, the Debtors contend that the Trustee wrongfully attempted to profit from the sale by paying himself, his law firm, and his realtor at the expense of the full satisfaction of the IRS lien and the Debtors' homestead exemption. They also assert that the Trustee "knowingly and improvidently" went forward with the sale of the Property when the "better course" would have been to not sell because of a lack of equity. In effect, the Debtors suggest that the Property is of inconsequential value and benefit to the bankruptcy estate and that, accordingly, the Trustee should have abandoned the Property rather than trying to sell it.

"Abandonment is the release from the debtor's estate of property previously included

---

*Enters., Inc.* 489 U.S. 235, 241 (1989)). In the matter at bar, however, the IRS's tax lien claim is not "oversecured"; in fact, it is "undersecured" because the tax claim will not be satisfied in full pursuant to the distribution mechanism under § 724(b). Accordingly, the IRS is not entitled to post-petition interest.

-21-

in that estate." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Protection*, 474 U.S. 494, 508

(1986) (Rehnquist, C.J., dissenting). Prior to the codification of 11 U.S.C. § 554, courts

developed a rule allowing the trustee to abandon property that was "worthless or not

expected to sell for a price sufficiently in excess of encumbrances to offset the costs of

administration." *Id.*; *Bolden*, 327 B.R. at 667. "This judge-made rule served the overriding

purpose of bankruptcy liquidation: the expeditious reduction of the debtor's property to

money, for equitable distribution to creditors[.]" *Midlantic Nat'l Bank*, 474 U.S. at 508.

Section 554 explicitly incorporates the power of abandonment into federal bankruptcy law,

providing in pertinent part that "[o]n request of a party in interest and after notice and a

hearing, the court may order the trustee to abandon any property of the estate that is

burdensome to the estate or that is of inconsequential value and benefit to the estate." 11

U.S.C. § 554(b). However, "'[a]bsent an attempt by the trustee to churn property worthless

to the estate just to increase fees, abandonment should very rarely be ordered.'" *Bolden*, 327

B.R. at 667 (*citing K.C. Mach. & Tool Co.*, 816 F.2d at 246).

  In the matter at bar, the efforts of the Trustee and his professionals were necessary

to value, market, and sell the Property, and there is simply no evidence that the Trustee

engaged in conduct designed to increase his fees or provide enhanced fees to his law firm or

real estate broker. The Debtors' specific claim that the Trustee negotiated an "unrealistically

high commission" for the broker and now wants them to pay for his "mistake" is both

baseless and erroneous. The Court entered an order on April 22, 2005, approving retention

of the broker and expressly noting that her commission was to be paid at the rate of 5% on

the final sale price of the Property. (Debtors' Resp. Ex. F at 37.) That Order was neither

contested nor appealed. Moreover, the rate of 5% of the sale price is sufficiently in line with commission rates currently paid to real estate brokers in this District, and the Debtors have not offered any evidence to suggest otherwise. In short, the evidence suggests that, rather than attempting to increase his fees and those of the professionals he was authorized to hire, the Trustee acted in accordance with his duties under 11 U.S.C. § 704 by trying to liquidate the property of the estate in order to equitably distribute the proceeds. *See* 11 U.S.C. § 704(1) (stating that "[t]he trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the bests interests of parties in interest").

Turning to the Debtors' contention that there is a lack of equity in the Property, proof that a debtor lacks equity in property establishes a prima facie case that the property is of inconsequential value and benefit to the estate and should be abandoned. *In re Paolella*, 79 B.R. 607, 610 (Bankr. E.D. Pa. 1987). This showing, however, may be rebutted by establishing that a secured creditor's lien is, or can be, subordinated to the trustee's interest in the property. *K.C. Mach. & Tool Co.*, 816 F.2d at 247. In this matter, the IRS's lien can be subordinated to the §§ 507(a)(1)-(7) priority claims pursuant to § 724(b) as discussed at length *supra*. "Because of the substantial benefit that can be realized from the sale of property subject to tax liens as a result of the operation of § 724(b), . . . abandonment of such property is not permitted even though there is no equity over the liens in the property." *Sherrill*, 78 B.R. at 807 n.5. Prior to the enactment of § 724(b) and its predecessor,[11]

---

[11] The legislative history of the statutory provision can be traced back to § 67(c)(3) of the Bankruptcy Act. *See Bino's*, 182 B.R. at 788; *Granite Lumber Co.*, 63 B.R. at 470-71.

-23-

administrative expenses traditionally were not charged against secured creditors. *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir. 1982). Thus, "there was no benefit accruing to the estate absent equity in the property or some other exception. . . . [T]his situation has been expressly changed by the Code, which subordinates the tax lien to the administrative creditors, in effect charging the administrative expense against the secured *tax* creditor." *Sherrill*, 78 B.R. at 807 n.5 (emphasis in original).

Based on the foregoing, the existence of the IRS lien rendered the Property beneficial to the estate and not susceptible to abandonment, notwithstanding a lack of equity in the Property, because the provisions of § 724(b) can be invoked to satisfy administrative expenses. Thus, abandonment is not proper in the instant matter. The Trustee was therefore correct in attempting to sell rather than abandon the Property, and the Property should be turned over to the Trustee so that the estate can realize the benefits of a sale.

## V.  CONCLUSION

For the foregoing reasons, the Court finds as a matter of law that the IRS's lien takes priority over the Debtors' claimed homestead exemption pursuant to 11 U.S.C. § 522(c)(2)(B). The Court further finds that the distribution mechanism required by 11 U.S.C. § 724(b) subordinates the IRS's lien to the priority claims under 11 U.S.C. §§ 507(a)(1)-(7). Thus, the Court holds that both the IRS's lien and the priority claims take precedence over the Debtors' homestead exemption. There will be no remaining funds after payment of the mortgage liens, the sale expenses, and most of the IRS tax lien with which to pay the Debtors their homestead exemption, which is subordinate to all of the above. Accordingly, the Court

AO 72A
(Rev. 8/82)

-24-

grants the Trustee's motion for summary judgment. The Trustee may take immediate

possession of the Debtors' real property without payment to the Debtors for their exemption.

This Opinion constitutes the Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be

entered pursuant to Federal Rule of Bankruptcy Procedure 9021.


ENTERED:


DATE: 12/15/5

_____
John H. Squires
United States Bankruptcy Judge


cc: See attached Service List

## SERVICE LIST

### In re David E. Grochocinski v. Martin & Elvira Laredo and the I.R.S.
**Adversary No.  05 A 01785**

David E. Grochocinski, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
800 Ravinia Place
Orland Park, IL 60462

Arthur W. Rummler, Esq.
Grochocinski Grochocinski & Lloyd, Ltd.
1900 Ravinia Place
Orland Park, IL 60642

Martin and Elvira Laredo
336 S. Cornell Avenue
Villa Park, IL 60181

Heather L. Richtarscik, Esq.
U.S. Dept. Of Justice - Tax Division
P.O. Box 55
Washington, D.C.  20044

Christopher J. Hales, Esq.
Springer, Brown, Covey, Gaertner & Davis
400 S. County Farm Road, Suite 330
Wheaton, IL 60187

Michael J. Davis, Esq.
Springer, Brown, Covey, et al
400 S. County Farm Road
Wheaton, IL 60187

Ira Bodenstein, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606

AO 72A
(Rev. 8/82)